DANIEL PENDAS, an insane person, by his guardian, Armando Pendas, *et al.,* v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

*176* So. 104.
Opinion Filed September 8, 1937.

*Caraballo, Graham & Caraballo,* for Appellants;
*Whitaker, Whitaker & Terrell,* for Appellee.

BUFORD, J.—On April 20th, 1932, the Equitable Life Assurance Society of the United States issued a life annuity policy to Enrique Pendas and agreed to pay at its home office in the City of New York to the annuitant under conditions stated in the policy monthly payments of $1,053.00 "beginning on the anniversary of the registered date of the contract upon which annuitant's age and nearest birthday is 70 years, but at any time prior to the commencement of such annuity payments on said date that the annuitant may, provided this contract is then in force, elect in lieu thereof either:

"(1) A LIFE ANNUITY beginning at any age shown in schedule 'A' on the third page hereof with monthly payments of the respective amounts provided therein, or

"(2) A REFUND ANNUITY beginning at any age shown in schedule 'B' on the third page hereof with monthly payments of the respective amounts provided therein."

The contract then provided:

"If the annuitant dies prior to the due date of the first Annuity payment hereunder, the Society will, upon receipt of due proof of the Annuitant's death, provided this contract is then in force and is then surrendered properly released, pay to the Annuitant's wife, Rosalia Pendas, bene-

ficiary (with the right to the Annuitant to change the beneficiary or assign this contract)

"A Death Benefit the amount of which shall be determined in accordance with Scheule 'C' on the fourth page hereof.

"This contract is issued in consideration of the payment in advance to the Society of a single premium of One Hundred Thousand and 00/100 Dollars, representing 100 premium units. The Provisions of the subsequent pages hereof form a part of this contract as fully as if recited at length over the signatures hereto affixed."

The policy contained the following clause:

"The Annuitant may elect to have any net sum due under this contract upon the death of the Annuitant prior to the due date of the first annuity payment applied under one or more of the following optional modes of settlement in lieu of the lump sum provided for on the first page hereof, and in the absence of such an election by the Annuitant, the beneficiary, after such death of the Annuitant, may so elect. The beneficiary, after such death of the Annuitant, may designate (with the right to change such designation) the person to whom any amount remaining unpaid at the death of the beneficiary shall be paid if there be no such person designated by the Annuitant and surviving. Such election, designation or request for change shall be in writing and shall not take effect until filed with the Society at its Home Office and endorsed upon the contract or the supplementary contract, if any.

"1. Deposit Option: Left on deposit with the Society at interest guaranteed at the rate of 3% per annum, with such Excess Interest Dividend as may be apportioned.

"2. Installment Option: Fixed Period. Paid in a fixed

number of equal annual, semi-annual, quarterly or monthly installments, as set forth in the following table.

"3. Life Income Option: Paid in equal annual, semi-annual, quarterly or monthly installments for five, ten or twenty years certain as may be elected and continuing during the remaining lifetime. of the beneficiary as shown in the following table..

"4. Installment Option: Fixed Amount. Paid in equal annual, semi-annual, quarterly or monthly installment of such amount as may be agreed upon until the net sum. due under this contract together with interest on the unpaid balances at the rate of 3% per annum and such Excess Interest Dividends as may be apportioned, shall be exhausted, the final payment to be the balance then remaining with the Society. If the Interest and Excess Interest Dividend for any year shall be in excess of installments payable in such year, then the total amount of the installments for the subsequent year shall be increased by the amount of such excess.

"Excess Interest Dividend: The foregoing Options are based upon an interest earning of 3% per annum; but if in any year the Society declares that funds held under such Options shall receive interest in excess of 3% per annum, the interest under Option 1, the amount of installment under Option 2, the amount of income during the fixed period of five, ten or twenty years under Option 3, and the funds held under Option 4, shall be increased for that year by an Excess Interest Dividend as determined and apportioned by the Society."

It also contains the following clauses:

"Assignments. No assignment of this contract shall be binding upon the Society or be deemed to be in force unless

in writing and until filed at its Home Office. The Society assumes no responsibility for the validity of any assignment.

"BENEFICIARY. If there is no written assignment of this contract in force and on file with the Society or if the only assignment in force and on file is to the Society as security for an advance, the Annuitant may from time to time, by written notice duly filed at the Society's Home Office, change the beneficiary, but such change shall take effect only upon its endorsement on this contract by the Society."

And also the following clause:

"The Annuitant (or assignee, if any) may, without the consent of the beneficiary, surrender, assign or pledge this contract and all rights hereunder or, subject to the Society's approval, change this contract. An assignment by the Annuitant shall operate to exclude any and all rights of any beneficiary under this contract except that upon release of all outstanding assignments or upon reassignment to the Annuitant all rights under this contract shall be the same as if such assignments of said contract had not been made and that if assigned or pledged as collateral only by the Annuitant any equity remaining at the death of the Annuitant shall accrue to the beneficiary."

On July 16, 1932, the insured having elected to change the Mode of Settlement, such change was approved by the insurer and a rider attached to the policy in the following language:

"THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

"ATTACHED TO AND MADE PART OF POLICY No. 8,815,096 on the life of ENRIQUE PENDAS, the Annuitant.

"SPECIAL PROVISION: In compliance with the written request of the Annuitant, the beneficiary and mode of settlement are changed as follows:

"1. It is hereby specially provided that settlement of the amount becoming due by reason of the death of the Annuitant prior to the due date of the first Annuity payment shall be made as follows:

"(a) If the Annuitant's son, DANIEL PENDAS, be then living settlement shall be made as provided in paragraph 2.

"(b) If the Annuitant's said son be not then living, settlement shall be made in a single sum with the Annuitant's wife, ROSALIA PENDAS, if living, if not living with the Annuitant's son, ARMANDO PENDAS, if living, if not living with the Annuitant's Executor or Administrators.

"2. The amount becoming due under paragraph 1 (a) shall be left on deposit with the Society in accordance with Option 1 of the Modes of Settlement at death of the Annuitant during the lifetime of the Annuitant's son, said DANIEL PENDAS, except that the Annuitant's said wife if living, without the consent of said DANIEL PENDAS, or if said wife be not living the Annuitant's son, said ARMANDO PENDAS, if living, without the consent of said DANIEL PENDAS, shall have the privilege on interest due dates of withdrawing installments of not less than Five Hundred Dollars each from the amount held on deposit until the deposit shall be less than Five Hundred Dollars when the balance may be withdrawn, the total of such installments not to exceed Six Thousand Dollars per annum. Interest on the amount held on deposit shall be paid monthly as each interest payment shall become due to the Annuitant's said wife, if living, if not living to the Annuitant's son, said ARMANDO PENDAS, if living, if not living to the Annuitant's son, said DANIEL PENDAS, if living. In the event of the death of the Annuitant's son, said DANIEL PENDAS, subsequent to the death of the Annuitant, the amount then remaining under said Option 1 together with any interest accrued thereon, shall be

paid in a single sum to the Annuitant's said wife, if living, if not living to the Annuitant's son,' said ARMANDO PENDAS, if living, if not living to the Annuitant's executors or administrators.

"New York, June 16, 1932.

"GEORGE F. SCHANTZ ( ? ),
*"Assistant Registrar."*

Thereafter, on December 20th, 1935, the insured assigned the policy by absolute assignment to Daniel Pendas, who was a son of the insured and who was mentally deranged. That assignment was in the following language:

"(Form of Absolute Assignment—*To be attached to and retained with the Policy* for use as evidence when required.)

"FOR ONE DOLLAR, to me in hand paid, and for other valuable considerations (the receipt of which is hereby acknowledged) I hereby assign, transfer and set over Policy No. 8815096 on the life of myself issued by THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, with all rights therein, and with all money now or hereafter due or payable thereon, and all dividends, options, benefits or advantages derived therefrom, including the right to surrender said policy at any time and to receive and receipt for the surrender value thereof, to DANIEL PENDAS, whose P. O. address is 2107 Morgan Street, Tampa Florida, and for the consideration above expressed I do also for my executors and administrators, guarantee the validity and sufficiency of this assignment to the assignee named herein, his executors, administrators and assigns; and my title to the said policy will forever warrant and defend.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 20th day of December, 1935.

"State of Florida,                    "ENRIQUE PENDAS (SEAL).

"County of Hillsborough.

"On this 20th day of December in the year of our Lord 1935, before me personally came Enrique Pendas, to me known and known to me to be the individual described in and who executed the foregoing assignment, and acknowledged that he executed the same.

"M. CARABALLO (Notary Seal)."

On December 30th, 1935, the insured died. Thereafter, Armando Pendas, another son of the insured, was appointed and qualified as Guardian of the person and estate of Daniel Pendas, Daniel having been adjudicated an insane person. Armando made proof of death and filed claim as Guardian for Daniel Pendas and demanded payment, under the terms of the contract, to him in his capacity as such Guardian, in monthly installments interest upon the sum of $108,600.00, which was then the principal due under the policy, at not less than 3% per annum and on such larger amount described in the policy as "excess interest dividend" that may be apportioned thereto, as well as any accumulated dividends; that he be entitled to withdraw from said principal sum monthly installments of not less than $500.00 each per month not to exceed $6,000.00 per year, all according to the terms of the agreement attached to the policy under date of June 16, 1932.

The insurer admitted its liability under the policy, but contended, in effect, that it was not authorized to make payments to the Guardian as requested. It was the contention of the Guardian that by the rider dated June 16, 1932, the insurer was bound to make the payments to the Guardian of the insane beneficiary in the manner directed by the insured, as evidenced by that agreement.

The insurer contended that the assignee of the policy was entitled to payment of death benefits in a lump sum or to one or more of the optional modes of settlement provided

for in the contract; that these are alternative and inconsistent rights requiring an election.

The insurer also contended that as Daniel Pendas, the assignee, is an insane person he could not make the election and that his Guardian could not make it for him, but that the election would have to be made by a court of equity.

Negotiations were had between representatives of the assignee and of the insurer, the insurer at no time denying its liability, but at all times insisting that under the terms of the contract and the conditions which then existed, the assignee must procure an election in his behalf of the mode of settlement by a court of equity.

The insurer also contended that under the existing conditions it would not be liable for attorney's fees· expended by the assignee or his Guardian in procuring such election to be made by a court of equity.

The parties failing to reach an agreement as to just what should be included and claimed in a bill of complaint and in an answer and in a decree, finally a suit was filed by Daniel Pendas, an insane person, by his Guardian, Armando Pendas; Rosalia Pendas, widow, individually and as Executrix under the last will and testament of Enrique Pendas, deceased, and Armando Pendas, single, individually and as Guardian of Daniel Pendas, an insane person, against the Equitable Life Assurance Society of the United States, a foreign corporation, in which it was alleged:

"Daniel Pendas, an insane person, by his guardian, Armando Pendas; Rosalia Pendas, widow, individually and as executrix under the last will and testament of Enrique Pendas, deceased, and Armando Pendas, single, individually and as guardian of Daniel Pendas, an insane person, all of Hillsborough County, Florida, by their attorneys, Caraballo, Graham and Caraballo, bring this, their bill of complaint,

against the Equitable Life Assurance Society of the United States, a corporation organized and existing under the laws of the State of New York, and allege:"

It is then alleged that on January 14, 1936, Daniel Pendas was adjudicated insane by the County Judge of Hillsborough County, Florida; that on January 15th, 1936, Armando Pendas was duly appointed Guardian of the said Daniel Pendas, an insane person, and that he thereafter duly qualified as such Guardian and became fully clothed with all right and powers of Guardian under the laws of Florida; that Rosalia Pendas is a widow and that Armando Pendas and Daniel Pendas are the sole heirs at law of Enrique Pendas, deceased. That the defendant, The Equitable Life Assurance Society of the United States, is a corporation organized under the laws of the State of New York; that on April 20, 1932, the defendant corporation in consideration of the sum of $100,000.00 in hand paid by Enrique Pendas issued him its life annuity policy or contract Number 8815096.

The agreements contained in the policy were then set forth.

After the general allegations it is alleged that it was further provided by the contract:

"(a) That the annuitant (or assignee, if any) may, without the consent of the beneficiary, surrender, assign or pledge the contract and all right thereunder, or subject to the Society's approval, change the contract.

"(b) An assignment by the annuitant shall operate to exclude any and all rights of any beneficiary under this contract.

"(c) Refund annuity payments becoming due after annuitant's death will be paid to the beneficiary designated by the annuitant.

"(d) The beneficiary may elect to have any net sum due under this contract upon the death of the annuitant prior to the due date of the first annuity payment, left on deposit with the Society at an interest rate guarantee at three per cent. per annum with such excess dividends as may be apportioned thereto.

"VII.  Plaintiffs further show that while the contract was in full force and effect, and after the annuitant had selected a refund annuity beginning at age seventy-one (71), as hereinbefore set forth, the said annuitant, Enrique Pendas, on the 20th day of December, A. D. 1935, did, for a valuable consideration, assign, transfer and set over unto the said Daniel Pendas, the said annuity contract, together with all rights therein, thereby vesting the said Daniel Pendas with all options, benefits or advantages to be derived therefrom, including all accrued and unpaid dividends and the right to surrender said policy at any time and to receive the surrender value thereof, as will appear from the absolute assignment attached to and forming a part of said contract hereto annexed as Exhibit 'A.'

"VIII.  That, thereafter, to-wit: on the 31st day of December, A. D. 1935, said day being a date prior to the due date of the first refund annuity payment under said contract, and before the said annuitant had reached the age of seventy-one (71) years, the said Enrique Pendas died. That at the time of his said death the death benefit under said contract, as provided by Schedule 'C' thereof, was the sum of Ten Hundred Eighty-six Dollars ($1,086.00) for each premium unit of One Thousand Dollars ($1,000.00) or the total sum of One Hundred Eight Thousand Six Hundred Dollars ($108,600.00), plus accumulated dividends."

It was then alleged that the Guardian as appointed made

proof of death and demanded the payments hereinabove mentioned.

It was alleged:

"That Armando Pendas, individually, and his mother, the said Rosalia Pendas, have joined this suit as parties plaintiff for the purpose of asserting their conformity with the demand of the said Armando Pendas, as such Guardian, and do hereby offer to execute any release which might be deemed by this court to be necessary in order to vest in the said Daniel Pendas and in the said Armando Pendas, as such Guardian, all rights which the said Armando Pendas, individually, or the said Rosalia Pendas might have by virtue of said contract and the facts herein recited."

It was prayed:

"1.   That the defendant be required to account to the said Armando Pendas, as such Guardian, for all accrued dividends.

"2.   That said defendant be required to account to the said Armando Pendas, as such Guardian, for all moneys now in its hands as and for death benefits under said contract.

"3.   That this Honorable Court find and decree that the method of settlement agreed upon between the late Enrique Pendas and the defendant on the 16th day of June, 1932, became a part of said contract and that said contract was consequently payable in the manner and form therein recited except that by the assignment dated the 23rd day of December, 1935, all payments provided by said special contract of June 16, 1932, became payable to Daniel Pendas and not to Rosalia Pendas and/or Armando Pendas.

"4.   That said defendant be ordered and decreed to pay to plaintiff, Armando Pendas, as such Guardian, in monthly

installments, interest on the sums so accounted for, at the rate of not less than three per cent. (3%) per annum with such further excess interest as may be apportioned thereto.

"5. That the defendant be ordered and directed to permit plaintiff, Armando Pendas, as such Guardian, to withdraw at any monthly interest paying period sums of not less than Five Hundred Dollars ($500.00) of said principal on deposit, not to exceed the sum of Six Thousand Dollars ($6,000.00) in any one year.

"6. That in the event this Court shall determine that by reason of the assignment of said contract to Daniel Pendas by the late Enrique Pendas, the method of payment provided in the special contract of June 16th, 1932, attached to and forming part of Exhibit 'A' herein, is not self-operative, that this Court may then decree that the adoption and election by Armando Pendas, as Guardian of said Daniel Pendas, of the method of payment provided by said contract of June 16, 1932, is in conformity with law and within the powers of the said Armando Pendas, as such Guardian, and binding upon the defendant.

"7. That in the event this Court shall determine that the said contract of June 16, 1932, is not self-operative and that Armando Pendas, as such Guardian, has not the power to select the method of payment of said moneys under any of the provisions of the contract, that then and in that event that this Honorable Court will make such selection for and on behalf of the said Daniel Pendas as this Court may determine to be for the best interests of the said Daniel Pendas.

"8. That the said defendant be required to pay to your orators or to such one or more of them as the Court may find entitled thereto, an attorney's fee for the solicitors of your orators in the premises, in the manner, form and

amount as is provided by the laws of the State of Florida and the rules and practice of this Court."

The answer of insurer admits the payment of the premium, the issuance of the policy, the endorsements, the assignment to Daniel Pendas, his insanity, and that proofs of death and claim were filed with it by the guardian and that the amount of its liability at that time was $111,015.96. The answer admits that insurer denied the right of the guardian to demand settlement in the form demanded, upon the theory that the insane assignee was without power to make the election and the guardian was without power and authority to make the attempted election of mode of settlement, and it averred that insurer was ready and willing to discharge its duty when a lawful election is made. It denied that complainant's solicitors had diligently cooperated with the solicitors of the insurer in arriving at a solution of the problem presented. It denied that it became obligated to pay plaintiff's solicitors an attorney's fee.

The answer averred that under the policy as assigned to Daniel Pendas, he became entitled to either (a) the death benefit in a lump sum, or (b) the optional modes of settlement. It averred that the optional modes of settlement are inconsistent rights involving a choice predicated upon knowledge and discrimination; that Daniel was without ability to exercise such rights and his Guardian was without power to elect between them and that an election by a court of equity was necessary and that when a decree of election as prayed in the bill of complaint should be made defendant would discharge its duty in this regard; that prior to the institution of suit defendant admitted its liability to the insane assignee of the policy and expressed its willingness to discharge that liability when a court of competent jurisdiction had made the necessary elections in behalf of the

insane assignee. It denied that any money judgment was necessary to be entered against the defendant, but averred that all that was necessary was for a court of equity to make an election between the alternative rights in behalf of the insane owner of the policy and that the exercise of such jurisdiction on the part of the court would not entitle the complainant to recover attorney's fees.

Testimony was taken on the merits, as well as looking to a determination by the court of what election it might make that would be for the best interests of the insane complainant. After hearing testimony, the court elected Option 1 of the optional modes of settlement contained in the policy on behalf of the insane assignee in lieu of the death benefit in a lump sum. That is, the court decreed an election to have the net sum due under the policy due at that time, to-wit: $114,884.85, left on deposit with the insurer with interest guaranteed at the rate of 3% per annum with such excess interest dividends as might be apportioned to the assignee, Daniel Pendas, an insane person, or his Guardian, in equal monthly installments. It required the insurer within thirty-one (31) days to place the proceeds on deposit and issue to Daniel Pendas its certificate of deposit, in conformity with the decree, and to deliver or offer to deliver the same to the Guardian, and to begin or offer to begin payments thereunder without becoming delinquent. The court retained jurisdiction of the cause to make such further decree as might become necessary or advisable to carry out the provisions of the same.

Much has been said in the briefs in regard to the intent of the parties. The whole question resolves itself into this: "What was the effect of the absolute assignment of the policy by the insured to his insane son?"

As long as the insured lived and held the policy he could

change the beneficiaries and modes of settlement. The very terms of the policy provide that the annuitant, or assignee, if any, may without the consent of the beneficiary, surrender, assign or pledge this contract and all rights thereunder. It provides further:

"An assignment by the annuitant shall operate to exclude any and all rights of any beneficiary under this contract, except that upon release of all outstanding assignments or upon reassignment to the annuitant of rights under this contract shall be the same as if such assignment of said contract had not been made."

It, therefore, necessarily follows that when the annuitant made the assignment of December 20, 1935, the effect of that assignment was to completely wipe out the effect of the election of mode of settlement and the designation of beneficiaries set forth in the rider of June 16, 1932, hereinbefore referred to.

The applicable law in this regard was enunciated by us in the case of 'Moon v. Williams, *et al.,* 102 Fla. 214, 135 Sou. 555, as follows:

"Where, under the terms of a life insurance policy there is reserved in the insured the right without the consent of the beneficiary to change the beneficiary first named in the policy upon the sole condition that the assent of the insurer be acquired, the beneficiary named in the policy acquires no vested right or interest during the life of the insured, but only acquires an expectancy. Mutual Benefit Life Insurance Co. v. Sweat, *et al.,* 222 Fed. 200, Ann. Cas. 1917 B 298; Kerr on Insurance 687; Denver Life Insurance Co. v. Crane, 19 Colo. 191, 73 Pac. 875; Hopkins v. Northwestern Life Insurance Co., 99 Fed. 199; Golden Star Fraternity v. Martin, 59 N. J. Law. 207; Sabin v. Phinney, 134 N. Y. Appeals 423; 31 N. E. 1087; Robinson v. United

States Mutual Acc. Association, 68 Fed. 825; Wingman v. Miller, 98 Ky. 620, 35 S. W. 937; Cellery v. John Hancock Mutual Life Insurance Co., 68 N. Y. Sup. 182. See also Atlantic Mutual Life Insurance Co. v. Gannon, *et al.*, 179 Mass. 291, 60 N. E. 933.

"The effect of the assignment of a life insurance policy, which assignment is made in accordance with the terms of the policy, is to place the assignee in the same status with respect to all rights and liabilities under it that the insured occupied before the transfer. It may be said to amount to the substitution for the assured of the assignee as a party to the policy. Atlantic Mutual Life Insurance Co. v. Gannon, *supra;* Bacon's Life and Accident Insurance, 4th Ed. Sec. 386; Metropolitan Life Insurance Co. v. O'Brien, 92 Mich. 584, 52 N. W. 1012; Opitz v. Karal, 118 Wisc. 527, 95 N. W. 948.

"A life insurance policy is a mere chose in action and unless some provision of the contract forbids its assignment, it may be assigned as other choses in action. See note 87 Am. St. Rep. 486, and authorities there cited. Bushnell v. Bushnell, 92 Ind. 503; Hutson, Administrator, v. Merryfield, Administrator, 51 Ind. 24."

The annuitant had the right to exercise the option in regard to modes of settlement in lieu of the lump sum as long as he owned the policy and he had that right when he made the designation of June 16, 1932, which was approved by the Home Office and attached to the policy, but his assignment to Daniel Pendas of December 20, 1935, completely destroyed that prior designation and left Daniel with the right to designate and to make a new election, but Daniel did not have the power to do that on account of his mental incapacity. Having the right and not having the power, equity will protect his right.

We think that the law involved here is clearly analogous to that which was involved in the case of First National Bank of St. Petersburg, as Guardian, etc., v. MacDonald, *et al.*, 100 Fla. 675, 130 Sou. 596. There we had under consideration the question:

"Can the Guardian of an insane widow, or the court for her, elect to dissent from the terms of her husband's will and to take dower, as authorized by Section 3629 R. G. S., 5493 C. G. L., or is such election personal to the widow?"

In that connection we said:

"An insane widow, or one acting for her, does not come into a court of equity for the purpose of renouncing her husband's will on like terms and in the same legal status as if she were sane. As to the same widow we have shown that the act of renunciation is personal, absolute and incontestable. The same right might be exercised by her guardian for her if specifically directed by statute; but our statute not having so directed she is left to her remedy in a court of equity. When made by a court of equity election is no longer personal and voluntary, but must be predicated on some ground of equity shown to exist in favor of the widow, and of which she is deprived by the will. In determining whether such equity exists the chancellor will be guided by what is to the best interest of the afflicted widow."

And again in the same case, we said:

"In addition to the foregoing there is another point which has a very grave bearing on our disposition of questions one and two. It is the right to elect between the provisions of the will and the statute. It has reference to the obligation imposed on a party to choose between two inconsistent or alternative rights or claims, in cases where there is a clear intention of the person from whom he derives one, that he

should not enjoy both. The doctrine of election presupposes a plurality of gifts or rights, with an intention, expressed or implied, of the party who has a right to control one or both, that one should be a substitute for the other. Black's Law Dictionary. The right of election is personal and involves choice which is predicated on knowledge and discrimination. Stephens v. Gibbs, 14 Fla. 331. An exercise of the right of election under the circumstances presented in this case involves the application of equitable principles that have their root deep in the Equity Jurisprudence of England, principles that indeed were old when the Cavaliers cast anchor off Jamestown, and the Pilgrims off Cape Cod. The conclusion is, therefore, inescapable that in this State the jurisdiction of a court of equity must be invoked to determine when and under what circumstances the will of the husband may be renounced in the interest of the insane widow and that the absolute right of the sane widow to renounce the provisions of the husband's will and take under the statute is personal to her and does not extend to her guardian for her."

In Pomeroy's Equity Jurisprudence, 4th Ed. Vol. 1, Sections 509 and 510, the author says:

"509. Infants.—It is very clear that an infant cannot elect.. In cases where an infant, if he had been an adult, would be bound to elect, the court has sometimes deferred the question of election, where this could be done without prejudice to the rights of other parties, until the infant came of age. The ordinary rule is for the court to direct an inquiry to be made whether it is for the infant's advantage to elect or not, and what election ought to be made. In other words, the court, as the result of a judicial examination, itself makes the election on the infant's behalf.

"510. Lunatics.—In like manner, where the person en-

titled or bound to elect is a lunatic, the court will make the election on his behalf, after having ascertained, through an inquiry, what action is most for his advantage; and this is the rule, even though the lunatic is under the care of a committee." (See note following.)

The only other question left for our determination is whether or not the court erred in refusing to decree attorney's fees in behalf of the complainant. The defendant was not delinquent. It was necessary for it to proceed with caution and to require the election to be made by the assignee in such a manner as would protect the insurer from being called upon a second time to pay the claim. The insurer was in the position of saying, " I owe you so much money; you have the right to say how it shall be paid and when you have said that in such a way as to bind you and protect me, I am ready, willing and able to pay it."

In United States Fire Insurance Co. v. Dickerson, *et al.*, 82 Fla. 442, 90 Sou. 613, it was said:

"The attorneys' fees provided for in our statute is in the nature of a penalty, although not such strictly speaking. The statutes are sustained under the doctrine that attorneys' fees may be imposed upon the delinquent insurance company under the police power of the State as a kind of penalty incurred in the conduct of a business affected with public interest. The case in this State which first held the Act of 1893, Chapter 4173, to be valid was Tillis v. Liverpool & London & Globe Ins. C., 46 Fla. 268, 35 Sou. Rep. 171. There it was held that the principles announced in the case of Farmers & Merchants Ins. Co. v. Dobney, 189 U. S. 301, 47 L. Ed. 821, 23 Sup. Ct. Rep. 565. controlled the case then before the Court where a motion was made to strike an amendment to the declaration in which attorneys' fees were claimed under the statute. The Court held that if the

statute was consistent with the provisions of the State and the Federal Constitutions the motion should be denied, and held the lower court to have erred in striking the amendment."

And again in that case it was said:

"Our statute provides for the penalty to be paid by the insurance company which unsuccessfully defends an action upon a policy of insurance issued by it where the property destroyed is real estate or personal property, and where the same is wholly or partially destroyed. In every case where an insurance company unsuccessfully defends an action against it upon a policy issued by it, it is liable for attorneys' fees, whether the defense is one of law as to the company's liability under the policy, or one of fact as to the amount of the damages."

The statute under which compensation for attorneys is claimed is Section 4263 R. G. S., 6220 C. G. L.

In Orlando Candy Co. v. New Hampshire Fire Ins. Co., of Manchester, 51 Fed. (2nd Series) 392, District Judge Strum, in discussing the statute under consideration, said:

"The statute in effect becomes a part of the contract because the parties contract subject to the terms of the statute. The liability imposed by the statute upon the insurer is in effect an *incident of the insurer's wrongful refusal to pay,* not a mere procedural incident to entry of judgment." (Emphasis supplied.)

We think that is the proper construction to be placed upon the statute and if there is no wrongful refusal to pay, then there is no statutory liability to pay.

In this case the chancellor found the equities to be with the defendant insurance company. The issues were determined in accordance with the contention of the insurance company. If the chancellor was right in that regard, and

we hold he was, then there was no wrongful refusal to pay and the insurance company should not be required to pay fees for complainant's attorneys in cases where there was no delinquency or wrongful refusal to pay on the part of the insurance company.

For the reasons stated, the decree appealed from should be affirmed and it is so ordered.

Affirmed.

TERRELL, BROWN and CHAPMAN, J. J., concur.