785 A.2d 457 (2001)
345 N.J. Super. 410
SOMERSET ORTHOPEDIC ASSOCIATES, P.A. and Paul Vessa, M.D., Plaintiffs-Appellants,
v.
HORIZON BLUE CROSS AND BLUE SHIELD OF NEW JERSEY, a nonprofit corporation of the State of New Jersey, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 2001.
Decided December 4, 2001.
*458 David S. Barmak, Washington, DC, argued the cause for appellants.
James P. Flynn, Roseland, argued the cause for respondent (Epstein, Becker & Green, attorneys; Mr. Flynn of counsel and on the brief; Jennifer Stefanick, on the brief).
Before Judges PRESSLER, WEFING and PARRILLO.
The opinion of the court was delivered by PARRILLO, J.A.D.
This is an appeal by plaintiffs Paul Vessa, M.D., and his medical practice Somerset Orthopedic Associates, P.A., from the trial court's dismissal of their declaratory judgment action. The action was brought by plaintiffs under the New Jersey Declaratory Judgment Law, N.J.S.A. 2A:16-50 to -62, seeking to invalidate an antiassignment provision in health care contracts issued by defendant Horizon Blue Cross and Blue Shield of New Jersey (Horizon) to subscriber-insureds prohibiting the assignment of benefit payments to non-participating physicians such as plaintiff Vessa. The trial court denied the relief sought, refusing to enforce assignments of benefit payments executed by Horizon's insureds in favor of plaintiffs. For the following reasons, we affirm.
Horizon is a non-profit health service corporation authorized and established under the Health Service Corporations Act, N.J.S.A. 17:48E-1 to -48. Horizon provides health benefits to its members, known as subscribers, under either individual or group health insurance plans. In addition to its Health Maintenance Organization (HMO) members, Horizon subscribers receive benefits under a variety of coverage options pursuant to benefit contracts that are either non-group (individual), employer-based, or government-based.[1] Generally, these benefit contracts provide *459 that, upon payment of a periodic subscription premium by the subscriber or on his behalf, Horizon agrees to pay a certain amount for described health care services contracted for by the subscriber. The amount to be paid is determined by the terms of the insurance contract between Horizon and the subscriber.
Horizon provides health benefits to its subscribers through a network of registered medical providers, who have contractually agreed to participate in Horizon's program and render services to subscribers on a set-fee basis. The medical providers who enter into these contracts with Horizon are called "participating" providers. The contracts between Horizon and the participating providers require the providers to accept agreed-upon payments for specified services as payment in full, thus relieving the subscriber of any further financial burden and, in turn, require Horizon to pay each participating provider directly, this doubtlessly to encourage greater participation in the network. Thus, "[a] participating provider of health care services is one who agrees in writing to render health care services to or for persons covered by a contract or contracts issued by a health service corporation in return for which the health service corporation agrees to make payment directly to the participating provider." N.J.S.A. 17:48E-10(b).
Providers who have not entered into contracts with Horizon to accept agreedupon payments as payment in full are "non-participating." Unlike participating providers to whom payment is made directly by Horizon on behalf of the subscriber-as provided in the Horizon-subscriber health benefits contract-when services are performed by a non-participating provider, payment may be made by Horizon directly to the subscriberalso as provided in the Horizon-subscriber health benefits contracts. All Horizon-subscriber insurance contracts contain an anti-assignment provision, allowing or requiring Horizon not to accept or honor assignments of benefits made to non-participating providers.[2] In other words, in all these contracts, Horizon has preserved its discretionary right to not accept assignment of benefits.[3]
Plaintiff Vessa is a duly licensed physician in New Jersey and, through his medical practice Somerset Orthopedic Associates, P.A., provides health care services to patients, a number of whom are insured under individual or group health plans underwritten, funded, or administered by Horizon. Plaintiffs do not participate in the Horizon network of medical providers. Although they are "non-participating" providers, in an effort to collect payment directly from Horizon for services they provide to Horizon subscribers, plaintiffs have taken assignments of Horizon subscribers' *460 benefits and submitted them to Horizon for payment. Horizon, relying on the antiassignment clause in its subscriber contracts, refuses to pay plaintiffs directly, but instead sends payment to the subscriber. In their declaratory judgment suit, plaintiffs challenge the validity of this antiassignment clause, arguing that it is contrary to the law of assignment in New Jersey.
To be sure, "the modern approach to contracts rejects traditional common-law restrictions on the alienability of contract rights in favor of free assignability of contracts." Rumbin v. Utica Mut. Ins. Co., 254 Conn. 259, 757 A.2d 526, 531 (2000). See Restatement (Second) of Contracts § 317 comment c (1981) (observing that "the historic common-law rule that a chose in action could not be assigned has largely disappeared."). Thus, in New Jersey, all choses in action arising on contract are assignable. N.J.S.A. 2A:25-1; Kimball Intern. v. Northfield Metal Prods., 334 N.J.Super. 596, 612, 760 A.2d 794 (App.Div.2000). It has been long held that any beneficial contract may be assigned, and courts of law will protect the rights of the assignee suing in the name of the assignor. Parsons v. Woodward, 22 N.J.L. 196, 205-06 (Sup.Ct.1849).
Although contract rights are generally freely assignable, the rule is not absolute. Where a contract uses specific and express language sufficiently manifesting an intention to prohibit the power of assignment without the consent of one or more of the contracting parties, courts generally uphold these contractual antiassignment clauses. Owen v. CNA Insurance/Continental Cas. Co., 167 N.J. 450, 460-61, 771 A.2d 1208 (2001)[4]; Garden State Bldgs. v. First Fidelity Bank, 305 N.J.Super. 510, 522, 702 A.2d 1315 (App. Div.1997). See also Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 442 (3d Cir. 1999). And although the free assignment of choses in action may be a valuable goal of public policy, it will not override competing, superior public interests. See, e.g., N.J.S.A. 34:11-4.14 (generally prohibiting assignment of wages); N.J.S.A. 34:15-29 (precluding assignment of workmen's compensation claims or awards); Cureton v. Joma Plumbing & Heating Co., 38 N.J. 326, 333, 184 A.2d 644 (1962) (to the same effect); N.J.S.A. 43:21-15(c) (precluding assignment of unemployment benefits); Village of Ridgewood v. Shell Oil, 289 N.J.Super. 181, 195, 673 A.2d 300 (App. Div.1996) (holding that a tort claim cannot be assigned prior to judgment); Caldwell v. Ogden Sea Transp., 618 F.2d 1037, 1048 (4th Cir.1980) (observing that the public policy underlying the prohibition against assignment of prejudgment tort claims is "to protect unscrupulous strangers to an occurrence from preying on the deprived circumstances of an injured person."); Parkway Ins. Co. v. N.J. Neck & Back, 330 N.J.Super. 172, 183-88, 748 A.2d 1221 (Law Div.1998) (holding that limitations imposed by N.J.S.A. 39:6A-4(e) on assignment of medical expense benefits without the written consent of the insurer in insurer's auto insurance policies are enforceable against medical provider assignees because they advance the public policy of cost reduction.). See also Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co., 874 P.2d 1049 (Colo.1994) (to the same effect).
With specific reference to the matter at hand, the validity of anti-assignment clauses in group health care contracts has been *461 upheld almost uniformly in the courts of other states. See St. Francis Reg'l Med. Ctr. v. Blue Cross Blue Shield of Kan., 810 F.Supp. 1209 (D.Kan.1992); Parrish v. Rocky Mountain Hosp. & Med. Servs. Co., 754 P.2d 1180, 1182 (Colo.Ct.App.1988); Kent General Hosp., Inc. v. Blue Cross & Blue Shield of Del., 442 A.2d 1368 (Del. 1982); Augusta Med. Complex v. Blue Cross of Kan., 230 Kan. 361, 634 P.2d 1123 (1981); Obstetricians-Gynecologists, P.C. v. Blue Cross & Blue Shield of Neb., 219 Neb. 199, 361 N.W.2d 550 (1985); Kassab v. Medical Serv. Ass'n. of Pa., 39 Pa. D. & C.2d 723 (1966), aff'd, 425 Pa. 630, 230 A.2d 205 (1967); Riddle Mem'l Hosp. v. Blue Cross of Greater Philadelphia, 63 Pa. Del. Cty. 361 (Pa. Common Pleas 1976); cf. Davidowitz v. Delta Dental Plan of Cal., Inc., 946 F.2d 1476, 1478-81 (9th Cir.1991) (holding that ERISA welfare payments are not assignable in the face of an anti-assignment clause in the health benefit plan); Washington Hosp. Ctr. Corp. v. Group Hosp. and Med. Servs., Inc., 758 F.Supp. 750, 753-55 (D.D.C.1991) (same); but see American Med. Int'l v. Arkansas Blue Cross & Blue Shield, 299 Ark. 514, 773 S.W.2d 831 (1989) (striking down anti-assignment clause in group health care policy in view of statute that states that "all... contracts, in writing, for the payment of money or property, or for both money and property, shall be assignable"); Toranto v. Blue Cross and Blue Shield of Texas, 993 S.W.2d 648, 649 (Tex.1999).
In holding that these anti-assignment clauses are enforceable against assignments to out-of-network medical providers of the insured's right to receive benefits under the policy, these cases conclude that such clauses "are valuable tools in persuading health [care] providers to keep their costs down" and as such override the general policy favoring the free alienability of choses in action. Rocky Mountain Hosp., supra, 754 P.2d at 1182; see also St. Francis, supra, 810 F.Supp. at 1218-20; Kent General Hosp., supra, 442 A.2d at 1371-72; Obstetricians-Gynecologists, supra, 361 N.W.2d at 555-56. In other words, the anti-assignment clause has been deemed to advance the overarching public interest in limiting health care costs for, if the patient could assign his or her rights to payment to outside medical providers, it would undercut the pre-arranged costs with in-network providers that are relied upon by non-profit health services corporations in deciding the premium amount. See generally Rocky Mountain Hosp., supra, 754 P.2d at 1182; Kent General Hosp., supra, 442 A.2d at 1371-72; Augusta Med. Complex, supra, 634 P.2d at 1126-27; Obstetricians-Gynecologists, supra, 361 N.W.2d at 556. Accordingly, these cases have held that the purported assignment of benefits to a non-participating medical provider, in the face of an antiassignment clause in a group health care policy, is void and unenforceable against the insurer as contrary to public policy.
In assessing the validity of anti-assignment provisions in a contract, New Jersey has adopted the standard advocated by the Restatement (Second) of Contracts. See Owen, supra, 167 N.J. at 467, 771 A.2d 1208. Section 317 recognizes the validity of assignments, but specifically identifies important exceptions that limit the assignability of contractual rights:
(2) A contractual right can be assigned unless
(a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or *462 (b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or
(c) assignment is validly precluded by contract.

[Restatement (Second) of Contracts § 317 (1981).]
Thus, for present purposes, contract rights are generally assignable except where assignment is prohibited by operation of law or public policy. From this exception, plaintiff argues conversely that, since Horizon's enabling statute does not contain an express provision specifically authorizing an anti-assignment clause in subscriber agreements, benefit payments are therefore assignable under N.J.S.A. 2A:25-1. We disagree. The absence of an affirmative directive is hardly dispositive because a clear legislative intent allowing such anti-assignment clauses may be otherwise gleaned from the overall statutory scheme under which Horizon was established and authorized to do business. Indeed, the anti-assignment clause at issue is supported by strong and compelling public policy embodied in that enabling law.
A brief foray into the statutory background of Horizon is required. Horizon is a non-profit, tax-exempt corporation operated for the benefit of its subscribers and invested with a public interest. N.J.S.A. 17:48E-1, -3(a), -41; Matter of Blue Cross & Blue Shield, 239 N.J.Super. 434, 438, 571 A.2d 985 (App.Div.1990). Prior to the adoption of the Health Service Corporations Act by L. 1985, c. 236, Horizon operated as separate hospital service and medical services corporations. N.J.S.A. 17:48-1 to -18 and N.J.S.A. 17:48A-1 to -35, respectively. "Blue Cross of New Jersey and Blue Shield of New Jersey were the only corporations ever organized under this legislation, and their investment with the public interest, as intended by the statutes, has never been in doubt." Matter of Blue Cross & Blue Shield, supra, 239 N.J.Super. at 436, 571 A.2d 985. Their purpose was to "satisfy the needs of the hospitals and the community as a whole through a partnership between hospitals and a non profit prepayment plan." Borland v. Bayonne Hosp., 122 N.J.Super. 387, 398, 300 A.2d 584 (Ch.1973), aff'd, 136 N.J.Super. 60, 344 A.2d 331 (App.Div. 1975), aff'd, 72 N.J. 152, 369 A.2d 1 (1977), cert. denied, 434 U.S. 817, 98 S.Ct. 56, 54 L.Ed.2d 73 (1977).
That a medical service corporation (and its successor, the health service corporation) is a special public interest organization distinct from ordinary health insurers is clear:
The basic distinction between medical service corporations and ordinary health and accident insurers is that the former undertake to provide prepaid medical services through participating physicians, thus relieving subscribers of any further financial burden, while the latter only undertake to indemnify an insured for medical expenses up to, but not beyond, the schedule of rates contained in the policy.
[Group Health Ins. of N.J. v. Howell, 40 N.J. 436, 451, 193 A.2d 103 (1963) (emphasis added).]
To that end, the Medical Service Corporations Act provides that "the expense of medical services to subscribers and other covered dependents is paid in whole or in part by the corporation to participating physicians of such plans or arrangements and to others as provided herein." N.J.S.A. 17:48A-1. This Act defines a participating physician as one:
who agrees in writing with the corporation to perform the medical services specified in the contracts issued by the corporation and at such rates of compensation as shall be determined by its *463 board of trustees and who agrees to abide by the bylaws, rules and regulations of the corporation applicable to participating physicians.

[N.J.S.A. 17:48A-1.]
Recognizing the importance of the medical service corporation's networks, the Court in Group Health Ins. of N.J., supra, further explained:
The primary purpose of a medical service corporation, however, is an undertaking to provide physicians who will render services to subscribers on a prepaid basis. Hence, if there are no physicians participating in the medical service corporation's plan, not only will the subscribers be deprived of the protection which they might reasonably have expected would be provided, but the corporation will, in effect, be doing business solely as a health and accident indemnity insurer without having qualified as such and rendering itself subject to the more stringent financial requirements of the General Insurance Laws....

[40 N.J. at 451, 193 A.2d 103 (emphasis added).]
The merger of Blue Cross and Blue Shield into a single incorporated entity was accomplished in February 1986 after the passage of the Health Service Corporations Act, N.J.S.A. 17:48E-1 to -48, whereby Horizon became the only health service corporation in New Jersey. Under the Act, Horizon continues to carry out the essentially public mission entrusted to its predecessor corporations of providing available and affordable health insurance to a broad-based community. N.J.S.A. 17:48E-3(d); Matter of Blue Cross & Blue Shield, supra, 239 N.J.Super. at 438, 571 A.2d 985. And the Legislature, whose creature Horizon is, expressly determined the manner in which the health service corporation would perform its public interest function and accomplish the statutory goal of health care cost containment. To that end, the Legislature specifically recognized the right of Horizon to enter into provider contracts wherein it could exercise some leverage as to price in return for direct payment. In this regard, the Legislature expressly contemplated an in-network of participating medical providers who agree to negotiate pre-arranged costs in exchange for direct payment:
A participating provider of health care services is one who agrees in writing to render health care services to or for persons covered by a contract or contracts issued by a health service corporation in return for which the health service corporation agrees to make payment directly to the participating provider.

[N.J.S.A. 17:48E-10(b) (emphasis added).]
At the same time, freedom of choice in selecting physicians was preserved for subscribers who receive directly from Horizon a reimbursement for payments made by the subscriber to a non-participating medical provider. See New Jersey Ins. Agents v. Hospital Serv. Plan, 68 N.J. 213, 222, 343 A.2d 739 (1975) (Conford, J., dissenting) (interpreting the predecessor statute, the Medical Service Corporations Act, N.J.S.A. 17:48A-1 to -18).
We think it clear that the Legislature recognized, as did the Supreme Court earlier in reference to predecessor legislation, Group Health Ins. of N.J., supra, the significance of creating a network of participating medical providers and its critical role in the success of this venture. Undeniably, Horizon's ability to control costs and hence provide affordable health care coverage is directly related to the number of medical providers participating in its program. Thus, inherent in its statutory mandate to control costs is a directive to Horizon to encourage broad participation *464 in its network of plan medical providers. Undoubtedly, non-profit health service corporations such as Horizon rely on antiassignment clauses as an important inducement to medical providers to join their insurance networks. Obviously, medical providers would have less reason to join if non-participating physicians could garner the same advantages without subjecting themselves to the contractual constraints. Indeed, such a "participation inducement" has been widely recognized by courts of other states that have considered the precise issue before us now. See generally Rocky Mountain Hosp., supra, 754 P.2d at 1182; Augusta Med. Complex, supra, 634 P.2d at 1126-27; Obstetricians-Gynecologists, supra, 361 N.W.2d at 556. See also Parrish Chiropractic Ctrs. v. Progressive Cas. Ins. Co., supra, 874 P.2d at 1053-54. The following passage from Obstetricians-Gynecologists, supra, is illustrative:
Further, Blue Shield has presented evidence to show its nonassignment clause is a valuable tool in persuading health care providers to participate in its physician's voluntary cost effectiveness program and accept set fees for health services, keeping health care costs down and passing that savings on to its subscribers, who number 450,000 in Nebraska. Such evidence indicates a far stronger public policy than that relied on by OB-GYN.

[361 N.W.2d at 556.]
In fact, the non-assignment clause has been described variously as "the keystone in the system," Kent General Hosp., supra, 442 A.2d at 1372 (citing Riddle Mem'l Hosp., supra, 63 Pa. Del. Cty. 361), and "vital to the functioning of [the health service corporation]." Augusta Med. Complex, supra, 634 P.2d at 1127.
Despite the self-evident nature of this proposition and the weight of authority in support thereof, plaintiffs nevertheless argue that there is no evidence that the so-called "participation inducement" accomplishes its intended purpose. The simple answer is that, regardless of Horizon's success in this endeavor, there is no basis to conclude as plaintiffs suggest and that in any event the Legislature has seen fit to meet the statewide problem of escalating health care costs by granting broad powers to Horizon to negotiate and enter into provider contracts for pre-arranged fees and direct benefits payments. The Legislature is presumed to have acted upon adequate factual support. Hutton Park Gardens v. Town Council of West Orange, 68 N.J. 543, 564-65, 350 A.2d 1 (1975). We do not go behind such legislative judgments. Edgewater Inv. Assocs. v. Borough of Edgewater, 103 N.J. 227, 235-36, 510 A.2d 1178 (1986); A & B Auto Stores of Jones St., Inc. v. City of Newark, 59 N.J. 5, 19, 279 A.2d 693 (1971); In re American Reliance Ins. Co., 251 N.J.Super. 541, 549, 598 A.2d 1219 (App.Div. 1991), certif. denied, 127 N.J. 556, 606 A.2d 369 (1992); Smith v. Motor Club of Am. Ins. Co., 54 N.J.Super. 37, 43-44, 148 A.2d 37 (Ch.Div.), aff'd, 56 N.J.Super. 203, 152 A.2d 369 (App.Div.1959).
Horizon is wholly a creature of the Legislature who imbued this health service corporation with a unique public interest role and empowered it with the means generally recognized as vital to that role. As the court below found, the anti-assignment clause is a critical tool to Horizon's efficient and effective functioning and we therefore find compelling reason for upholding the enforceability of this provision.
By parity of reasoning, the assignment of benefits to non-participating physicians such as plaintiffs, by reducing the incentive to contractually join Horizon's provider networks, is violative of strong public policy embodied in Horizon's enabling legislation. This clear expression of legislative intent not only has been recognized *465 by courts of other states interpreting similar legislative schemes, but also within New Jersey's own regulatory structure, as evidenced by the executive department's approval of forms of policies containing the very anti-assignment clauses at issue here. We may infer from such approval that these anti-assignment clauses comport with both the statutory language and the legislative intent of affording health care coverage while containing costs. Cf. Motor Club of Am. Ins. Co. v. Phillips, 66 N.J. 277, 286, 330 A.2d 360 (1974); Longworth v. Ohio Cas., 213 N.J.Super. 70, 87-88, 516 A.2d 287 (Law Div.1986), aff'd sub nom, Longworth v. Van Houten, 223 N.J.Super. 174, 538 A.2d 414 (App.Div. 1988). Consequently, the general policy favoring full alienability of choses in action embodied in N.J.S.A. 2A:25-1 must bend to the far more specific expression of legislative intent in N.J.S.A. 17:48E-1 to -48, see New Jersey Transit Corp. v. Somerville, 139 N.J. 582, 591, 661 A.2d 778 (1995); State v. Dilley, 48 N.J. 383, 387, 226 A.2d 1 (1967), and the far stronger public interest in health care cost control underlying that Act. See Restatement (Second) of Contracts § 317 (1981).
We therefore hold that the anti-assignment clause in Horizon's subscriber contracts is valid and enforceable to prevent assignment by subscribers of policy benefit payments to non-participating medical providers without Horizon's consent. Because such subscriber assignments are void as contrary to public policy, we affirm the trial court's dismissal of plaintiff's complaint based on their contrary claim. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989).
The order appealed from is affirmed.
NOTES
[1] Horizon subscribers receive benefits under the following types of coverage: a) the New Jersey State Health Benefits Plan; b) the Federal Employee Plan; c) Individual and Small Coverage Reform Policies; d) Pre-Reform contracts; and e) Employer Sponsored Benefit Plans.
[2] Plaintiffs' claim in this lawsuit for direct medical benefits payments, as non-Horizon network medical providers, has no application to Horizon's HMO products since, in general, all care rendered to Horizon's HMO members is provided by participating in-network physicians.
[3] In fact, the content of individual and small employer reform contractsapproved, respectively, by the Individual Health Coverage Board and the Small Employer Board, and codified in the New Jersey Administrative Code at sections 11:20 at appendices A-F, U and section 11:21, at appendices A, F, G, Y, HH, and IIcontains language restricting assignments by subscribers. A typical standard form anti-assignment clause in such contracts provides: "No assignment or transfer by You of any of Your interest under this Policy is valid unless We consent thereto. However, We may, in Our discretion, pay a Provider directly for services rendered to You." N.J.A.C. 11:20-App. A, B, C, D, E, U.
[4] "To meet that standard, the non-assignment provision generally must state that non-conforming assignments (i) shall be `void' or `invalid,' or (ii) that the assignee shall acquire no rights or the non-assigning party shall not recognize any such assignment." Owen, supra, 167 N.J. at 461, 771 A.2d 1208.