955 So.2d 1140 (2007)
ABRAHAM K. KOHL, D.C., individually and Dr. Abraham K. Kohl, P.A., d/b/a Kohl Chiropractic, on behalf of themselves and all others similarly situated, Appellant,
v.
BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., Appellee.
No. 4D06-2533.
District Court of Appeal of Florida, Fourth District.
March 21, 2007.
*1141 Ronald F. Shapiro of Sperry, Shapiro & Kashi, P.A., Plantation, for appellants.
Steven E. Siff and Justin B. Uhlemann of McDermott Will & Emery, LLP, Miami, for appellee.
GROSS, J.
This case involves an attack on an anti-assignment of benefits clause in a health insurance policy. We hold that the policy provision was enforceable, not ambiguous, and in accord with public policy.
Abraham K. Kohl, D.C. and his business, Dr. Abraham K. Kohl, P.A. d/b/a Kohl Chiropractic (collectively referred to as "Kohl"), timely appeal a final summary judgment rendered in favor of appellee, Blue Cross and Blue Shield of Florida, Inc.
The facts are not in dispute. The case involves Blue Cross's liability to Kohl for health insurance benefits Blue Cross previously paid to Dori Staples, Kohl's patient and a Blue Cross insured, under an individual policy. Staples was not a party to the lawsuit.
Kohl provides chiropractic medical services in Broward County, Florida. Kohl is not a participating provider in the Blue Cross network of physicians and does not have a provider agreement with Blue Cross. As a new patient of Kohl's, Staples executed an assignment of benefits form prepared by Kohl, purportedly assigning her right to receive all health insurance benefits under her policy with Blue Cross.
The assignment of benefits form read:
I hereby instruct and direct the ___________________ Insurance Company to pay by check made out and mailed directly to:
 Dr. Abraham K. Kohl
 76 N. University Drive
 Pembroke Pines, Fl. 33024
OR
If my current policy prohibits direct payment to the doctor, then I hereby also instruct and direct you to make out the check to me and mail it as follows:
 Kohl Chiropractic
 76 N. University Drive
 Pembroke Pines, Fl. 33024
The professional or medical expense benefits allowable, and otherwise payable *1142 to me under my current insurance policy as payment toward the total charges for professional services rendered. THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY. . . .
Kohl performed chiropractic services for Staples that were covered under her Blue Cross policy. At the time of the services, Staples's insurance policy was memorialized in a Non-Group Preferred Patient Care II Major Medical Insurance Contract[1] ("policy"). The portion of the policy relevant to the assignment of benefits under the contract read:
Eligible Non-PPC Providers
Eligible Non-PPC Providers are those health care Providers that have not entered into an agreement with BCBSF to participate in the PPC Provider network or were not participating in the network at the time the service or supply was provided. BCBSF's payment for covered services rendered by an eligible Non-PPC Provider, if any, will be at the lower Coinsurance percentage of the PPC schedule amount, as set forth in the Schedule of Benefits.
The insured is responsible for filing claims for services and supplies rendered by eligible Non-PPC Providers. BCBSF's payment, if any, for covered services rendered by an eligible Non-PPC Provider will always be made directly to the Insured. BCBSF will not honor any assignment to an eligible Non-PPC Provider, including without limitation, any of the following assignments: an assignment of the benefits due under this Contract; an assignment of the right to receive payments under this Contract; or an assignment of a claim for damages resulting from a breach, or any alleged breach of this Contract.
(Emphasis in original).
Although Kohl submitted benefit claims forms to Blue Cross, Blue Cross issued all benefits payable under the policy directly to Staples, who failed to pay Kohl.
Kohl filed a three-count complaint for (i) declaratory relief as to his rights under Staples's purported assignment of benefits; (ii) breach of contract vis-a-vis that assignment of benefits; and (iii) damages for payment of a debt assigned. Both sides moved for summary judgment. The circuit court entered final summary judgment in favor of Blue Cross and against Kohl.
Whether the trial court correctly granted a motion for summary judgment is a question of law; therefore, this court reviews such a decision de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000). "To obtain a final summary judgment, the moving party must conclusively demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to a judgment as a matter of law." Maldonado v. Publix Supermarkets, 939 So.2d 290 (Fla. 4th DCA 2006) (citing Fla. R. Civ. P. 1.510(c); Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966)). The proof must be sufficient "to overcome all reasonable inferences which may be drawn in favor of the opposing party." Id.
Kohl argues that to preclude the power to assign, a contract must contain an express provision that assignment is forbidden and that any attempt to assign shall be deemed void or invalid. Kohl *1143 argues that the policy's lack of necessary explicit language prohibiting assignment of benefits renders it ambiguous. Kohl points out that insurers must write their policies to say what they mean to avoid findings of ambiguity. See Discover Prop. and Cas. Ins. Co. v. Beach Cars of West Palm, Inc., 929 So.2d 729 (Fla. 4th DCA 2006). In Kohl's words, the policy does not contain a provision that "prohibits, proscribes, prevents, forbids, or invalidates any attempt to assign benefits" so that Staples's assignment was valid, obligating Blue Cross to pay the benefits directly to him.
"[A]ll contractual rights are assignable unless the contract prohibits the assignment, the contract involves obligations of a personal nature, or public policy dictates against the assignment." Classic Concepts, Inc. v. Poland, 570 So.2d 311, 313 (Fla. 4th DCA 1990). A court may enforce insurance policy provisions that clearly and unambiguously (1) preclude assignment, or (2) require the insurer's permission before an assignment is made. Classic Concepts Inc., 570 So.2d at 311. Where there is no such provision forbidding assignment, an insurance policy may be assigned as any other chose in action. Cadore v. Cadore, 67 So.2d 635 (Fla.1953); Pendas v. Equitable Life Assur. Soc. of U.S., 129 Fla. 253, 176 So. 104 (1937); see also Md. Cas. Co. v. Murphy, 342 So.2d 1051 (Fla. 3d DCA 1977) (holding that silence as to assignability creates ambiguity that must be resolved in favor of the insured.)
Significantly, Florida statutes authorize prohibitions on assignment of both health insurance benefits and health insurance contracts. See § 627.638(2), Fla. Stat. (2005)("Whenever, in any health insurance claim form, an insured specifically authorizes payment of benefits directly to any recognized . . . physician . . ., the insurer shall make such payment of benefits directly to any recognized . . . physician . . ., the insurer shall make such payment to the designated provider of such services, unless otherwise provided in the insurance contract."); § 627.422, Fla. Stat. (2005) (A policy may be assignable, or not assignable, as provided by its terms.) (Emphasis added).
As quoted above, the policy provision on assignability stated:
BCBSF's payment, if any, for covered services rendered by an eligible Non-PPC Provider will always be made directly to the Insured. BCBSF will not honor any assignment to an eligible Non-PPC Provider, including without limitation, any of the following assignments: an assignment of the benefits due under this Contract; an assignment of the right to receive payments under this Contract; or an assignment of a claim for damages resulting from a breach, or any alleged breach of this Contract.
(Emphasis in original). "Eligible Non-PPC Providers" are defined as "those health care Providers that have not entered into an agreement with BCBSF to participate in the PPC Provider network" or were not participating in the network at the time the service or supply was provided. The policy designates "Doctors of Chiropractic" as eligible providers.
Whether an ambiguity exists in the policy is a question of law that is reviewed de novo. See Torwest v. Killilea, 942 So.2d 1019, 1020-21 (Fla. 4th DCA 2006) (citing Essex Ins. Co. v. Simpler, 911 So.2d 794 (Fla. 1st DCA 2004)). Language in a contract is ambiguous where it is "fairly susceptible to more than one interpretation." McInerney v. Klovstad, 935 So.2d 529, 531-32 (Fla. 5th DCA 2006). "In reviewing a contract . . . to determine its true meaning, the court must review the entire contract without fragmenting *1144 any segment or portion." Torwest, 942 So.2d at 1020 (citing J.C. Penney Co. v. Koff, 345 So.2d 732, 735 (Fla. 4th DCA 1977)).
Here, the Policy clearly and prominently states that it "will not honor" assignments of benefits to non-participating providers and that all benefits for covered services rendered by non-participating providers will "always" be paid "directly to the Insured." The drafters attempted to write the policy in "everyday language" to effectively communicate with insureds. The everyday language clearly conveys to laymen that they, and not the non-participating provider, will always receive money for medical services received and that an assignment of benefits to such a provider will not work. See generally Nat'l Merch. Co. v. United Serv. Auto. Ass'n, 400 So.2d 526, 529 (Fla. 1st DCA 1981) ("[A]n insurer has a duty to make its policy provisions and words plain, clear, and prominent to the layman, in a form which he can understand, especially in regard to coverage provisions.").
Kohl essentially argues that the assignment provision is ambiguous because it does not use the correct "magic words" prohibiting assignment; the policy did not say that the insured "may not," "shall not" or "cannot" assign benefits or that assignment of benefits is "forbidden," "prohibited," or "not permitted." Kohl nitpicks at the policy language to argue that we should create an ambiguity by drawing the legalistic distinction between the "right" to assign and the "power" to assign. No Florida case or statute requires a specific verbal formula for a ban on assignments to be effective. Two Florida cases cited by Kohl turn on the scope of the anti-assignment clause, not on whether the anti-assignment language was precise enough to be effective. See State Farm Life Ins. Co. v. Fla. Asset Fin. Corp., 786 So.2d 1 (Fla. 4th DCA 2000) (holding that purported assignor was not a party to the annuity contract restricting assignment, so that he could assign the right to future payments); Aldana v. Colonial Palms Plaza Ltd., 591 So.2d 953 (Fla. 3d DCA 1991) (holding that a commercial lease provision prohibiting assignment of the "lease" restricted delegation of lease duties, but not assignment of the right to receive contractual payments). We agree with the Minnesota Supreme Court and
will not impose formulaic restraints on the language that contracting parties may employ to craft an anti-assignment clause that limits the power to assign. We believe the best approach is to simply apply the plain meaning of the words employed by the parties. When a contract prohibits assignment in very specific and unmistakable terms, any purported assignment is void. Although requiring the use of specific language, such as "void" or "invalid" . . . would help to resolve any conceivable ambiguity about whether the parties intended to limit the "power" to assign rather than the "right" to assign, it is difficult to identify a clearer way to communicate an intent to deny a party the power to assign than to expressly say so.
Travertine Corp. v. Lexington-Silverwood, 683 N.W.2d 267, 273 (Minn.2004).
Public policy may limit the parties' freedom to incorporate an anti-assignment clause into a contract. However, public policy favors the type of anti-assignment clause at issue in this case. See Somerset Orthopedic Assoc., P.A., 345 N.J.Super. 410, 785 A.2d 457, 461 (2001)(citing Parrish v. Rocky Mountain Hosp. and Med. Servs. Co., 754 P.2d 1180, 1182 (Colo.App.1988)); Kent Gen. Hosp., Inc. v. Blue Cross & Blue Shield of Del., Inc., 442 A.2d 1368, 1371-72 (Del.1982); Obstetricians-Gynecologists, P.C. v. Blue Shield of Neb., 219 Neb. 199, 361 N.W.2d 550, 555-56 (1985). Anti-assignment clauses *1145 prohibiting an insured's assignments to out-of-network medical providers "`are valuable tools in persuading health [care] providers to keep their costs down' and as such override the general policy favoring the free alienability of choses in action." Somerset Orthopedic, 785 A.2d at 461 (quoting Rocky Mountain Hosp., 754 P.2d at 1182); see also Augusta Med. Complex, Inc. v. Blue Cross of Kan., Inc., 230 Kan. 361, 634 P.2d 1123, 1126 (1981) (wherein the Supreme Court of Kansas explained its decision to uphold the non-assignability provision in health insurance subscriber's contracts as an "urgent and overriding public interest" to contain health care costs). "The anti-assignment clause has been deemed to advance the overarching public interest in limiting health care costs for, if the patient could assign his or her rights to payment to outside medical providers, it would undercut the pre-arranged costs with in-network providers that are relied upon by non-profit health services corporations in deciding the premium amount." Somerset Orthopedic., 785 A.2d at 461. The benefit to this system is that the insurer is able to impose cost restraints on the participating health care providers who, in return, receive quick and direct payment from the insurer. "If a patient could obtain care from a non-participating [provider] and assign it the patient's right to be reimbursed under a group policy, in the teeth of an anti-assignment clause, this direct payment inducement to become a participating [provider] would be weakened or eliminated." Washington Hosp. Ctr. Corp. v. Group Hospitalization & Med. Servs., Inc., 758 F.Supp. 750, 754 (D.D.C.1991).
Affirmed.
WARNER and TAYLOR, JJ., concur.
NOTES
[1] From June 8, 1996, to June 7, 2002, Staples was insured under BCBSF's Non-Group Preferred Patient Care II Major Medical Insurance Contract ("PPC II Policy"). Effective June 8, 2002, Staples was insured under BCBSF's BlueChoice for Individuals Under 65 Non-Group Contract.