Parsons v. Woodward.

---

PARSONS v. WOODWARD.

1. A contract to deliver at a certain price a quantity of trees of a specified kind, to be grown after the contract, is not strictly a contract of sale, nor would it be valid as such, but it is a valid executory contract; and it does not confine the vendor to deliver any particular individual trees, or only trees raised by the contractor, but a tender of any trees answering the de-scription in the contract will be a compliance with the contract.

2. Any beneficial contract may be assigned, and courts of law will protect the rights of the assignee suing in the name of the assignor. And such as-signment, made in good faith, is a sufficient replication to a plea, that the nominal plaintiff, after such assignment, became bankrupt, or assigned all his rights and choses in action to a general assignee or to an assignee under the insolvent law.

This is an action of covenant, and the plaintiff declared as follows :

" For that whereas heretofore, *to wit,* on (the 19th January, 1839,) at M. H., in the county of B., and within the jurisdiction of this court, by certain articles of agreement, &c., making profert, it was agreed, by and between the said parties, that the defendant, for four thousand morus multicaulis trees, on the day and year last aforesaid, sold to him by the plaintiff, and by him to be delivered upon the ground where the said trees should grow, in the fall months of the year aforesaid, the trees to be at least three feet high and as much above as they should grow, root, stalk, and branch, would pay to the plaintiff the sum of twelve and a half cents per tree for each and every tree so as aforesaid sold and described, when they should be delivered in the fall aforesaid. And, for the faithful performance of the said agreement, the said parties bound themselves, &c., in the sum of $1000, as by said articles, &c., would appear." The declaration then avers that the plaintiff, afterwards, in the fall of the year aforesaid, *to wit,* on the 21st of November, in the year aforesaid, had on five several lots of ground, situate in the township of C., in said county, four thousand morus multicaulis trees, grown upon said lots, of the description named in the agreement, ready to be delivered, on said lots, to the defendant, where they remained ready to be delivered, of which the defendant afterwards, on &c., at &c., had notice; and although the defendant was requested to come to the lots and accept the trees, and pay therefor, yet he refused to accept and pay, and still continues, &c., contrary to his agreement, &c., concluding in the usual form of breach in such cases.

The second count is similar to the first, with this exception, that it does not state the number of lots upon which the trees were situate, but avers generally that the plaintiff had them upon the ground where they had grown, in the township of C., &c., ready to be delivered, &c.

To this declaration the defendant pleaded—

1st. *Non est factum.*

2d. *Actio non:* because, he saith, that the said plaintiff had not in the fall of the year 1839, on the 21st of November, or at any other time in the fall months of said year, four thousand

morus multicaulis trees, or any other quantity, on the ground where they grew, of the description and dimensions alleged in the declaration, ready to be delivered to the defendant in conformity with the agreement, concluding to the country.

3d. *Actio non:* because, he says, that before and at the usual time of planting morus multicaulis trees in the spring of the year 1839, being the spring next succeeding the date of said articles of agreement, and when it was necessary to have planted said trees to be ready for delivery at the time specified in said articles of agreement, the said Richard H. Parsons had not any morus multicaulis trees to plant, and did not plant or raise any morus multicaulis trees that season, and had not at any time in the fall season of that year any morus multicaulis trees to deliver to the said John E. Woodward, jun., in pursuance of and in conformity with said articles of agreement, or any such trees of his own property whatsoever; but on the contrary, did propose to deliver to the said John E. Woodward, jun., and did request him to receive four thousand morus multicaulis trees of one John Hitchens, in the lieu and stead of the said four thousand morus multicaulis trees of the said Richard H. Parsons mentioned in said agreement; which said trees of the said John Hitchens the said John E. Woodward, jun., refused to accept or receive in lieu and stead of the said four thousand morus multicaulis trees agreed to be delivered by the said Richard H. Parsons, and this he, the said John E. Woodward, jun., is ready to verify; wherefore he prays judgment, &c.

4th. *Actio non:* because, he says, that at the time of making and executing the said articles of agreement, *to wit*, on the 19th of January, 1839, the said Richard H. Parsons was the owner and in possession of morus multicaulis trees sufficient to have raised therefrom the said four thousand morus multicaulis trees, as specified in said articles of agreement, and that afterwards, and before the usual time for planting said trees, in the spring then next following, *to wit*, on the 19th March, in the year last aforesaid, he, the said plaintiff, sold and delivered the said trees to divers persons, and entirely divested himself hereof, and of all right and interest therein, and has not since

Parsons v. Woodward.

that time been the owner or in possession of any morus multi-caulis trees whatsoever to deliver to the said defendant, and this he, the said defendant, is ready to verify; wherefore he prays judgment, &c.

5th. *Actio non:* because, he says, that the said morus multi-caulis trees mentioned in the said declaration of the said plaintiff, and therein alleged to have grown upon five several lots of ground in the township of C., and to have been ready in the fall of the year 1839 to be delivered on the said lots to the said defendant, were not the property of the said plaintiff, but the property of one John Hitchens; and the said defendant protest-ing that he was not bound by said articles of agreement to re-ceive the said four thousand morus multicaulis trees mentioned in the said articles of agreement of the said John Hitchens, or any other person; but the said plaintiff nevertheless saith, that he, the said defendant, never had any notice whatever from the said plaintiff that the said trees were ready to be delivered, and this he, the said defendant is ready to verify; wherefore he prays judgment, &c.

6th. *Actio non:* because, he says, that at the time of mak-ing and executing the said articles of agreement, *to wit*, on the 19th of January, 1839, the said plaintiff had not any morus multicaulis trees to sell to the said defendant, and this he, the said defendant, is ready to verify; wherefore he prays judgment, &c.

7th. *Actio non:* because, he says, that after the making and executing the said articles of agreement, *to wit*, on the 20th of March, 1839, the said plaintiff made and executed to Craig Moffett and Mathew McHenry a deed of assignment of all his lands, tenements, and hereditaments, goods, chattels, moneys and effects, rights and credits whatsoever, and gene-rally all his estate and property, real and personal, for the equal benefit of his creditors, pursuant to the statute in such case made and provided; that the said assignees did accept of the said assignment, whereby the said plaintiff became and was divested of all his estate, real and personal, and of all interest whatsoever in and to the said articles of agreement, and the same became and was vested in the said Craig Moffett and

Parsons v. Woodward.

Mathew McHenry, as assignees as aforesaid; and this he, the said defendant, is ready to verify; wherefore he prays judgment, &c.

Upon the first and second pleas the plaintiff joined issue. To the 7th plea the plaintiff replied—

*Precludi non:* because, he saith, that before the making and execution of the deed of assignment in the said plea mentioned, *to wit*, on the 18th of March, 1839, at, &c., he, the said plaintiff, by writing under his hand endorsed on said articles, and for and in consideration of the sum of ten dollars, to him paid by one John Hitchens, did assign all the right, title, and interest of the said plaintiff to the said articles of agreement to the said John Hitchens, and did authorize him to fulfil the contract contained in said articles, as fully as the said plaintiff himself could have done, and did then and there deliver the said articles to the said John Hitchens, of which said several premises the said defendant afterwards, *to wit*, on the day and year last aforesaid, had notice. And the said plaintiff further saith, that the writ of summons in this case was sued out in the name of him, the said plaintiff, for the use and on the behalf of the said John Hitchens, and for the purpose of enabling him, the said John Hitchens, to recover and receive the said sum of money stipulated to be paid by the said defendant, upon the delivery to him of the said trees in the said declaration mentioned, according to the form and effect of the said articles of agreement, and not for the benefit, use, or behoof of the said plaintiff, that is to say, at, &c., and this he is ready to verify; wherefore he prays judgment and his damages, &c.

The plaintiff demurred specially to the third, fourth, fifth, and sixth pleas. The causes assigned will sufficiently appear in the points taken by counsel, and the defendant joined in demurrer.

The defendant demurred generally to the replication to the fourth plea, and the plaintiff joined in demurrer.

Argued before NEVIUS, CARPENTER, and OGDEN, Justices.

*W. L. Dayton,* for plaintiff.

The third plea is multifarious, and sets up several distinct matters of defence. It is also argumentative. But if the plea sets up anything which is a defence, it amounts to a plea of non-performance, by the plaintiff, of the conditions on his part to be performed, and should have concluded to the country. The plea, however, is no answer to the declaration. There is nothing in the covenant set forth in the declaration which shows that the plaintiff undertook to deliver any specified trees of his own, growing in a particular field. He might raise them by the agency of John Hitchens, or any one else, provided he had them ready for delivery of the stipulated character and at the proper time. Most of these remarks apply to the other pleas demurred to.

The fourth plea is also argumentative, and proceeds upon the idea of the sale of some specific trees, the property of the plaintiff at the time of making the agreement. It is no answer to the declaration.

The remarks already made apply to the fifth plea, which is double, and sets up no legal defence. It, as well as the other pleas, is evasive and argumentative, and does not deny, confess, or avoid the substantial matters alleged in the declaration. It sets up that the property of the trees alleged to have been ready for delivery was in one John Hitchens, and not in the plaintiff, and avers that the defendant had no notice, &c. It should have concluded to the country.

The sixth plea sets up the immaterial allegation, that the plaintiff, at the time he made and executed the article of agreement on which the suit is brought, did not own any morus multicaulis trees. *Conover* v. *Tindall, Spenc.* 517 ; 1 *Chit. Pl.* 556–7 ; *Stevens* v. *Bowers,* 1 *Harr.* 16, 19 ; 2 *Kent* 468 ; 6 *Wend.* 123.

The replication avoids the effect of the matter set up in the seventh plea. The assignment, which was under the statute, only carried property in which the debtor had a beneficial interest. It did not affect the property which had been previously assigned to Hitchens. *Sloane* v. *Somers,* 2 *Green,* 509, 512.

Vol. ii.                    N

*P. D. Vroom,* contra.

Pleas which set up several facts tending to establish one point are not multifarious, *to wit,* in this case, that the plaintiff did not offer to deliver his own trees, but those of another person. The agreement implied that the trees were to be the trees of the plaintiff. *Conover* v. *Tindall* does not apply to sales of personal property.

The sixth plea denies property in the plaintiff at the time of the sale. There must be something to be sold, something on which the contract can operate. *Chit. on Con.* 332 (*ed.* 1844); *Robinson* v. *McDonnell,* 5 *M. & S.* 228, 236.

As to the seventh plea and application, the contract is not such an intent as could be assigned to Hitchens, so as to pass a right against us.

CARPENTER, J., delivered the opinion of the court.

The case, as presented by the pleadings, is in substance this : The parties, 19th of January, 1839, entered into this covenant, that the defendant, for four thousand morus multicaulis trees, on that day sold to him by the plaintiff, to be delivered on the ground where the said trees should grow, in the fall months of the same year, and to be of a stipulated character, would pay the plaintiff twelve and a half cents for each tree so as aforesaid sold and described, when they should be delivered. On the 18th of March, 1839, the plaintiff, by endorsement on the covenant, assigned his interest in the contract to one John Hitchens ; and on the 20th of March, 1839, the plaintiff made a general assignment, under the statute, for the benefit of his creditors.

Objections have been urged to the third, fourth, fifth, and sixth pleas, upon grounds specially assigned for causes of demurrer ; but it will scarcely be necessary to advert to technical grounds relating to the form of the pleas, if the defence attempted to be set up is insufficient and the pleas are entirely defective in substance. Now the defence set up is, that the trees held ready for delivery, and whereof notice was given to the defendant, were the trees not of the plaintiff, but of one John Hitchens. It is very true that it has been held, that in a

strict contract of sale *to pass the title* the articles must belong to the grantor, and have an existence actual or potential at the time of making the contract, and that the grant is void if otherwise, unless ratified after the property has been acquired. *Lunn* v. *Thornton*, 1 *C. B.* 379 ; *Jones* v. *Richardson*, 10 *Metc.* 481 ; 9 *Boston Law Reporter* 344 *S. C.* See *Mitchel* v. *Winslow*, 2 *Story Rep.* 638 ; 2 *Kent* 468 ; *Ib.* 504 ; *Bell on the Contract of Sale* 16, 26, &c., (*Law Lib. ed.*, 1845).

The two cases just cited, in which the older authorities are collected, have placed the question in a clear light. But an agreement in respect of something to be collected and furnished, though not strictly a contract of sale, because the article is not specified or identified and capable of delivery, yet it may be good as a special or executory agreement. This is not a contract of sale, but a special executory agreement under seal, in which the plaintiff covenanted to deliver a specified quantity of a particular article at a future time. The defendant has not, upon oyer, set out the covenant in his plea. There is nothing in the covenant, as stated in the declaration, to show that the plaintiff undertook to deliver any specific trees, or the produce of any specific trees, then belonging to him and growing in any particular field. He agreed to deliver (by words applicable, it is true, to a present sale, but which must be understood according to the subject matter of the contract,) four thousand morus multicaulis trees, not then planted or even in existence, to be delivered at a specified time on the ground where they should be subsequently planted and grown. There is nothing that debarred him from procuring them to be raised by John Hitchens, or any one else, to whom he might delegate the duty and assign the profits. The terms of the agreement, as shown in the declaration, that the trees should be delivered in the field where they should be subsequently grown, and of course planted, seem to be conclusive that there was then no present sale, but only an executory agreement to deliver trees of a particular character and description. If specific trees then in the field had been in the contemplation of the parties, the liability of the plaintiff to deliver the trees would have depended upon his success in cultivating the trees,

and upon their growth into the requisite quality. *Boyd* v. *Siff-kin*, 2 *Camp.* 326. And of course the liability of the defendant would have depended upon the ability of the plaintiff to deliver those trees in the state so required by the covenant. But nothing is seen in the covenant which requires or will admit of this construction. On the contrary the plaintiff, at all events, was then to deliver in the field (not any specified field, but wherever the trees should be grown,) trees of the requisite character; and if he did tender such trees, no matter by whom raised, the defendant was bound to accept and pay for them.

The third plea sets up, that at the usual time of planting, in the spring next after the making of the covenant, the plaintiff had no multicaulis trees to plant; that he did not plant or raise any that season, and in the fall had none to deliver of his own property, but proposed to deliver the trees of one John Hitchens. If this plea raises any matter of defence, it is argumentatively the same matter set up by the second plea, that he had not any of the requisite character ready to be delivered in conformity with the agreement. While it seems faulty as argumentative, yet, if we are right in the construction of the covenant, it is defective in substance, presenting no substantial defence, as with the assent of Hitchens, his trees, if of the requisite character, rightly tendered, would be a full compliance with the stipulation on the part of the plaintiff.

. The fourth plea proceeds upon the same idea, of the sale of some specific trees. It is therefore equally defective, and on the same grounds with the plea already disposed of.

The fifth plea sets up want of notice that the trees were ready to be delivered. Properly pleaded, undoubtedly, this would be a good defence. But the plea is based upon the same idea, of a sale of some specific trees. It avers that the trees mentioned in the declaration, and therein obliged to have grown upon certain lots, &c., were not the property of the plaintiff, but of one John Hitchens, and protesting that the defendant was not bound to receive the said trees; then it avers that he had no notice. Considered as a plea simply, that no

Parsons v. Woodward.

notice was given of the plaintiff's readiness to deliver, it is faulty for the reason specially assigned, of an improper conclusion. It is a mere negative response to an affirmative allegation in the declaration. It is also faulty because argumentative and attempting to put in issue matter not alleged, nor necessary to be alleged, in the declaration.

The sixth plea is also defective, for the principal reason already given. Upon this contract it was immaterial whether, at the time of making it, the plaintiff had or had not multicaulis trees. His covenant was to deliver trees of a certain description at a subsequent time.

The replication to the seventh plea presents the question, whether the contract was one which could be assigned, and the beneficial interest pass under such assignment to Hitchens; so that he could fulfil the terms of the contract, and maintain an action for its breach against the opposite party, in the name of the plaintiff. If it can so pass, by priority in time, undoubtedly, it will be protected against the subsequent general assignment.

It was a well known rule of the common law, that a mere thing in action was not assignable at law, with the exception of negotiable instruments, unless by statute; such is still the general rule, at least without the assent of the debtor. But it is otherwise in equity, where one party may purchase by assignment the whole interest of another in a contract, or security or other property, even in litigation, provided there be nothing which savors of maintenance. Thus an equitable interest under a contract for the purchase of real estate may be the subject of sale, the original holder becoming in such case a trustee for the sub-purchaser to whom such sale is made; and he will be compelled, under proper indemnity, to permit his name to be used in any proceedings necessary for obtaining the benefit of the contract. Even unearned freight has been held the subject of equitable agreement or assignment, which will be protected at law as well as in equity. *Leslie* v. *Guthrie*, 1 *Bing. N. Cases* 639. See 2 *Story Eq. Jur.* § 1050, 1055, and *Cases.*

The doctrine of equitable assignments, having its origin in courts of equity, has been followed to a great extent in courts of law, though the mode in which equitable rights are there protected or enforced is limited by technical forms and arbitrary rules. So far have courts gone that it has even been said of the ancient rule, that choses in action are not assignable, that it only remains to give form to some legal proceedings. One form in which the rule still remains is, that when a debt or other chose in action is assigned, ordinarily it is necessary to sue at law in the name of the original creditor, the person to whom transferred being treated rather as an attorney than an assignee; though his rights will be recognized and protected, to some extent at least, even in a court of law. *Sloan* v. *Somers*, 2 *Green* 510; *Winch* v. *Keeley*, 1 *T. R.* 619; *Welsh* v. *Mandeville*, 5 *Wheat.* 277. It was said by Justice Story, who delivered the opinion of the court in the last case, that courts of law, following in this respect the rules of equity, now notice assignments of choses in action, and exert themselves to afford them any support and protection not inconsistent with the established principles and modes of proceeding which govern tribunals according to the course of the common law.

The authorities referred to in the progress of this opinion clearly show that beneficial contracts are assignable in equity, in which case, when *bona fide* and for a valuable consideration, the assignor becomes a trustee for the assignee, who is authorized to use the name of the former to enforce the interest which he has acquired. The necessary steps may be taken by the assignee, as the attorney or agent of the assignor, though for his own benefit; and such equitable assignment previous to bankruptcy or insolvency, when necessary may be pleaded, many instances of which might be cited. See *Parnham* v. *Hurst*, 8 *M. & W.* 743, and *Winch* v. *Keeley*, already cited. When the plea, as here, sets up the insolvency of the assignor, the proper answer in the replication is, that the debt or contract though in the name of the plaintiff, yet in substance belongs to a third party, and therefore did not pass under the assignment for the benefit of the creditors; if not,

it is still in the plaintiff, for the benefit of such third person, and the action can be maintained.

The pleas demurred to are overruled, and the replication to the seventh plea sustained.

Judgment for the plaintiff.