**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3296-24

CENTRA CAPITAL
INVESTMENTS LLC,

     Plaintiff-Appellant,

v.

BAPU CORPORATION and
HARSHAD PATEL,

     Defendants-Respondents.

_____

Argued May 6, 2026 – Decided June 4, 2026

Before Judges Gummer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3016-22.

Christina N. Stripp argued the cause for appellant (Cohn Lifland Pearlman Herrmann & Knopf, attorneys; Jeffrey W. Herrmann and Christina N. Stripp, on the briefs).

Jason Pressman argued the cause for respondents (Mackevich, Burke & Stanicki, attorneys; James E. Mackevich, on the brief).

PER CURIAM

Plaintiff Centra Capital Investments LLC (CCI) appeals from a June 13, 2025 final judgment entered in favor of defendants BAPU Corporation and Harshad Patel following a bench trial.[1] Because the court's factual findings were adequately supported in the trial record and it correctly applied the law of assignment, we affirm.

We glean the facts and procedural history from the record. Harshad[2] is the sole shareholder of BAPU. BAPU owns commercial property in Union, New Jersey. The property is home to the Clinton Manor hotel and banquet hall. The hotel and banquet operations are managed through two separate entities, the Clinton Manor Hotel, LLC and Clinton Manor Banquet, LLC owned by Harshad's sons, Himansu and Akash.

---

[1] In CCI's case information statement filed with its notice of appeal, it states it also appeals from the September 9, 2022 order that transferred venue from the Bergen County vicinage to the Union County vicinage and the October 21, 2022 order that denied reconsideration of the September order. Because CCI has not briefed issues concerning these orders, we deem them waived. See W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 459 (App. Div. 2008) ("An issue not briefed is deemed waived.").

[2] We refer to multiple individuals with the Patel surname. Therefore, to avoid confusion, we reference them by their first names. We intend no disrespect in doing so.

A-3296-24

In March 2022, Harshad engaged his broker, Guy Parsons, to obtain financing from CCI to pay off the current mortgage on the property. On March 2, 2022, David Hecht, President of CCI, issued a Letter of Intent (LOI) to BAPU and Harshad. The LOI provided that BAPU is the borrower, Harshad is the guarantor, the loan amount requested was $5,200,000, and CCI was to receive a first mortgage on the property. The LOI stated that BAPU could "confirm [its] acceptance of [the LOI] by countersigning . . . and returning" the LOI "with a fee of $12,000." A few days later, Harshad signed the LOI, and Parsons forwarded the LOI to Hecht via email. The $12,000 was wired to CCI.

On March 14, 2022, CCI provided a loan commitment (Commitment) to BAPU and Harshad. The Commitment superseded all prior communications and correspondence. The Commitment provided that BAPU is the borrower, Harshad is the guarantor, the loan amount requested was $5,000,000, the closing was to "take place no later than April 15, 2022, time of the essence," and CCI was to receive "[a] first and paramount lien" on the property. The Commitment required BAPU to provide an attorney's legal opinion regarding various topics at closing. In addition, the Commitment stated:

> ACCEPTANCE OF COMMITMENT
> The Commitment and all of its terms and conditions will become effective only upon delivery to CCI of a copy of this Commitment, signed by the Borrower(s)

3

(the Effective Date). The Commitment Fee in the amount of Three Percent (3%) of the Amount of Loan (more particularly described above), shall on the Effective Date become earned, payable, and non-refundable for among other things, CCI's commitment to provide funds to Borrower in an amount set forth in CCI's Loan Offer to the Borrower(s).

Notwithstanding the above, . . . CCI will allow payment of the Commitment Fee at the closing of the loan. . . .

. . . .

NO ASSIGNMENT
This Commitment is for the benefit of the Borrower(s) only and may not be assigned except upon the prior written consent of CCI, which consent may be withheld for any reason or no reason in CCI's sole discretion. . . .

[(Boldface omitted).]

Moreover, the Commitment included general conditions listed on Schedule B. The conditions included:

16. No Oral Modifications: Notwithstanding any course of dealing between the parties, no amendment, modification, recission, waiver, or release of any provision of this Commitment shall be effective unless the same shall be in writing and signed by the Borrower(s) and Lender.

[(Boldface omitted).]

Harshad signed and accepted the Commitment on behalf of BAPU and individually and as guarantor.

A-3296-24

On April 14, 2022, Hecht, on behalf of CCI, wrote to BAPU and Harshad advising CCI had "concluded its initial due diligence" and "CCI [wa]s prepared to proceed to a closing in the amount of $5,000,000."  The next day, Harshad "[a]greed and [a]ccepted."

On May 12, 2022, First American Title Insurance Company (First American) emailed Michael Curran, borrowers' attorney; Harshad; Himansu; Parsons; and others and provided a preliminary settlement statement for the closing.  According to the statement, Centra CMH 22 Partners LLC (Centra CMH) was the lender and entitled to the 3% fee of $150,000.  In an email response, Parsons stated:  "Lender is Centra CMH . . . they have . . . lender [f]ee=[$]150,000."

At trial, on direct examination, Hecht provided the following testimony regarding Centra CMH:

> Q[.]  Now, . . . who is Centra CMH[?] . . .
>
> A[.]  That's a newly formed corporation that [CCI] formed, like [CCI] do[es] with every loan, which translate[s] to Centra Clinton Manor Hotel 22 Partners, LLC.
>
> Q[.]  So you said with every loan.  So can you explain that a little bit more?
>
> A[.]  Okay.  Every loan [CCI] do[es], [it] form[s] a new LLC that is the owner of that mortgage.  And the

purpose of this is that, you know, there will not be any two loans commingled with one another under the same corporation. So every loan [CCI] do[es], [it] form[s] a new corporation.

The preliminary settlement statement disclosed a number of judgments. First American's counsel advised Curran that because several of the judgments remained outstanding, the title company "must hold at least 150% of the judgment amount."

On May 12, 2022, Allen Susser, lender's attorney, wrote to Curran and First American. In the "RE" line at the beginning of the letter, Susser referenced "Centra CMH," the "$5,000,000 Mortgage Financing with B[APU]," and his firm's file number. Susser provided a number of documents for the closing, including guaranty of payments from Clinton Manor Hotel LLC, Clinton Manor Banquet LLC, Akash, Himansu, and Harshad.

On the same day, Curran emailed Susser and others and advised that his clients were unable to close on May 13, 2022. Curran explained "[t]here [wa]s no way [his clients] c[ould] bring $400,000 additional cash to the closing," noting First American's "bizarre demands." Curran stated his clients needed more time and it was unknown "what else w[ould] come up." Curran also noted some difficulty in satisfying "paperwork demands" that "should have been raised

6

earlier." Curran offered two options: "1. [c]lose, as we suggested, on 05/18/2022 or 05/19/2022 or 2. [w]e will explore other options, if you refuse."

In response, Susser stated "[b]efore lender can decide what it wants to do, please provide a detailed explanation/plan how borrower will be ready to close on the 18th." Susser noted that aside from the judgments, "borrower will have to bring funds to [the] closing."

On May 17, 2022, Hecht, on behalf of CCI, wrote to BAPU and Harshad. He stated BAPU's decision not to proceed with the loan was "a default under" the Commitment. Hecht asserted "the commitment fee equal to three (3%) percent of the loan amount ($5,000,000) became earned, due and non[-]refundable on March 14, 2022." Hecht demanded payment of the commitment fee, as well as payment of attorney's fees. Hecht stated Harshad "[a]s guarantor of the obligations of BAPU . . . [was] also in default" and demanded Harshad make payment. (Capitalization modified).

In June 2022, CCI filed a complaint naming BAPU and Harshad as defendants. CCI alleged that in March 2022, it issued a written loan Commitment to BAPU to extend financing in the amount of $5,000,000. Further, Harshad signed the Commitment on behalf of BAPU and as a personal guarantor. Moreover, the Commitment bound defendants to pay a commitment

7

fee to CCI. CCI alleged in April 2022, it "confirmed that it had completed its due diligence and was prepared to proceed to clos[e]" on the loan and defendants "agreed and accepted to proceed to clos[e] in accordance with the conditions" of the Commitment. Therefore, CCI claimed, it had earned the "non-refundable [c]ommitment [f]ee." Moreover, CCI alleged "the [c]ommitment [f]ee [wa]s due and payable to [it] regardless of whether the loan closed." CCI claimed "the loan never closed, and the [c]ommitment [f]ee was never paid."

In its two-count complaint, CCI alleged breach of contract and breach of the implied covenant of good faith and fair dealing due to defendants' failure to pay the commitment fee. CCI alleged it had been damaged and was entitled to payment of the fee as well as attorney's fees and costs.

The matter proceeded to trial over the course of two days. The parties filed stipulated and undisputed facts and thirteen joint exhibits and offered their own exhibits into evidence. In addition, CCI presented the testimony of Hecht and defendants presented the testimony of Harshad. Following the conclusion of the second day of trial, the court instructed the parties to submit their proposed written findings of fact and conclusions of law. After receiving their submissions, the court heard arguments.

The court entered a June 13, 2025 order of final judgment with an accompanying statement of reasons, finding in favor of defendants and dismissing CCI's complaint with prejudice. Because the cornerstone of the court's decision is CCI's purported assignment of the Commitment to Centra CMH, we focus on the court's determination in this respect. The court found there was no written assignment of the Commitment between CCI and Centra CMH. Nevertheless, the court determined CCI had assigned the Commitment to Centra CMH by cobbling the following information: (1) the preliminary settlement statement identified Centra CMH as the lender; (2) Centra CMH's counsel's letter of May 12, 2022 referenced Centra CMH; (3) the email exchanges on May 12, 2022 circulated the closing statement, and Parsons stated "Lender is Centra CMH . . . they have . . . lender fee=$150,000" (footnote omitted) (capitalization modified); (4) Curran's undated opinion letter, drafted by Susser, states Centra CMH is the lender; (5) undated and unsigned Guaranty of Payment between Harshad and Centra CMH; (6) Hecht's testimony that Harshad would have signed the Guaranty of Payment to Centra CMH if the loan had closed; (7) a unanimous consent resolution of Clinton Manor Hotel LLC, "to act as guarantor for the $5,000,000 loan by Centra CMH . . . to B[APU] Corp."; (8) a unanimous consent resolution of Clinton Manor Banquet LLC

referenced CMH as lender "to act as guarantor for the $5,000,000[] loan by Centra CMH . . . to B[APU] Corp."; and (9) Hecht's testimony that Centra CMH was "a newly formed corporation that [CCI] formed, like [it] do[es] with every loan" and that Centra CMH "is the owner of the mortgage."

The court concluded CCI "did not 'change the name of the Lender'" as asserted by defendants but had "assigned its rights under the Commitment to" Centra CMH. Having concluded CCI assigned its rights, the court determined defendants were excused from paying the commitment fee because "the [l]ender in a loan agreement is a material term of an agreement" and CCI "unilaterally assign[ed] the rights (and obligations) under the agreement without any prior notice to . . . [d]efendant[s] . . . , and without obtaining consent as required in [s]ection 1[6] of Schedule B." Further, the court considered the Commitment expressly prohibited defendants from assigning without CCI's written consent but found the "document['s] . . . silence" regarding CCI's right did "not necessarily provide [CCI] with the unilateral right to assign" especially given the requirements of section 16. The court determined CCI's assignment of the Commitment effectuated a material breach of the Commitment and relieved defendants of the obligation to pay the commitment fee.

Moreover, the court concluded notwithstanding CCI's breach—because of its unilateral assignment of the Commitment—it "had no further rights under the Commitment." The court determined CCI could not "assert a claim to the [c]ommitment [f]ee or any rights under the Commitment" because its "assignment of rights, was a full assignment of any and all rights." The court determined CCI had "no standing to assert a claim for payment of the $150,000 [c]ommitment [f]ee."

On appeal, CCI admittedly raises arguments that were not raised below but explains "no one contemplated the possibility of an assignment at trial." Indeed, CCI states the assignment argument "was not included by either party in pre-trial briefs, in trial testimony, in the post-trial written summations, or in the oral summations." Instead, CCI contends "[t]he [t]rial [c]ourt raised the theory, sua sponte, out of the blue and after the close of evidence." Defendants counter that the Commitment could not be modified absent a writing signed by defendants and CCI and there is no "evidence that [defendants] agreed to" an assignment from CCI to Centra CMH. Further, defendants argue "[t]he identification of the [l]ender was a material term of the" Commitment and CCI's assignment to Centra CMH without its consent was a material breach, relieving it of the obligation to pay the commitment fee.

11

Our standard of review of a trial judge's factual findings after a bench trial is well-settled. "Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review[.]" D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). "We may not overturn the trial court's fact[-]findings unless we conclude that those findings are 'manifestly unsupported' by the 'reasonably credible evidence' in the record." Balducci v. Cige, 240 N.J. 574, 595 (2020) (quoting Seidman, 205 N.J. at 169).

On an appeal from a bench trial, "[w]e give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2005)). "[W]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)).

However, where the trial court's decision constitutes a legal determination, we exercise de novo review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "A trial court's interpretation

of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Ibid.

Whether a party effectuated an assignment is a determination made by the court.  See Stark v. Nat'l Rsch. & Design Corp., 33 N.J. Super. 315, 321 (App. Div. 1954) ("Whether a transaction constitutes . . . an agreement for an assignment is for the determination of the court in accordance with the generally recognized legal rules for the construction of contracts, and an important element is the intention of the parties.").  Further, "[w]hether a party has standing to pursue a claim is a question of law subject to de novo review." Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414 (2018).

"A party violates the terms of a contract by failing to fulfill a requirement enumerated in the agreement."  Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019).  Further,

> [t]o prevail on a claim of breach of contract,
>
>> [New Jersey] law imposes on a plaintiff the burden to prove four elements:  first, that the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a breach of the contract; and fourth, that defendants' breach, or failure to

A-3296-24

> do what the contract required, caused a loss to the plaintiffs.
>
> [Goldfarb v. Solimine, 245 N.J. 326, 338-39 (2021) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)) (internal quotation marks omitted).]

The elements "must be proven by a preponderance of the evidence." Globe Motor Co., 225 N.J. at 482. "The term 'preponderance of the evidence' means that amount of evidence that causes you to conclude that the allegation is probably true. To prove an allegation by the preponderance of the evidence, a party must convince you that the allegation is more likely true than not true." Model Jury Charges (Civil), 1.12H, "Preponderance of the Evidence (short version)" (approved Nov. 1998).

"In the event of a 'breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement.'" Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)). "[A] breach is material if it 'goes to the essence of the contract.'" Ibid. (quoting Ross Sys. v. Linden Dari-Delite, Inc., 35 N.J. 329, 341 (1961)). The New Jersey Supreme Court has "adopt[ed] the flexible criteria set forth in Section 241 of the Restatement (Second) of Contracts (A.L.I. 1981) (Restatement (Second))" to determine whether a breach is material. Id. at 174-75. Therefore, we consider:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and]

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

[Id. at 175 (alteration in original) (quoting Restatement (Second), § 241).]

Under N.J.S.A. 2A:25-1, "all choses in action arising on contract shall be assignable, and the assignee may sue thereon in his own name." The "modern approach . . . [is] in favor of free assignability of contracts." Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield, 345 N.J. Super. 410, 415 (App. Div. 2001) (quoting Rumbin v. Utica Mut. Ins. Co., 757 A.2d 526, 531 (Conn. 2000)). Therefore, "in New Jersey, all choses in action arising on contract are assignable." Ibid. "[A]ny beneficial contract may be assigned, and courts of law will protect the rights of the assignee." Ibid.

A-3296-24

"Our law does not dictate any precise formula for such assignments." New Century Fin. Servs., Inc. v. Oughla, 437 N.J. Super. 299, 315 (App. Div. 2014). Instead, "[a]ll that is required is evidence of the intent to transfer one's rights and a description of the intangible right being assigned sufficient to make it readily identifiable." Ibid.

"[A]n assignment of a contract right extinguishes the right in the assignor and recreates the same right in the assignee[.]" Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy, 416 N.J. Super. 418, 426 (App. Div. 2010) (quoting 9 John E. Murray, Jr. Corbin on Contracts § 47.1 (rev. ed. 2007)) (internal quotation marks omitted). The assignee becomes the real party in interest and divests the assignor of its right to bring an action. See Lech v. State Farm Ins. Co., 335 N.J. Super. 254, 258 (App. Div. 2000) ("[I]n the context of assignment of PIP claims, it has been held that the health care provider is the real party in interest and that the assignment of a patient's PIP claims against its insurer divests the patient of a right to bring a separate action."). "New Jersey law does not recognize any distinction between the concepts of standing and real party in interest." N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 413 (App. Div. 1997). "Standing refers to the plaintiff's ability or entitlement to maintain an action before the

court. Courts will not entertain matters in which plaintiffs do not have sufficient legal standing." Id. at 410 (citations omitted).

Applying this well-established law, we conclude CCI assigned its rights to Centra CMH. The trial court's factual findings in this regard are undisputed and sufficiently supported in the record. It is clear from the documents and Hecht's testimony that CCI intended to assign and did assign its rights to Centra CMH.

Next, we consider the importance of the assignment under the Commitment. Because the assignment to Centra CMH effectuated an "amendment" or "modification" to the Commitment, CCI breached the Commitment because it was implemented without a writing between CCI and BAPU and Harshad as required. Nevertheless, we conclude the breach was not material and would not excuse BAPU or Harshad's performance, i.e. payment of the commitment fee. Applying Restatement (Second) § 241, BAPU would have received the loan and neither BAPU nor Harshad were deprived of any benefit; and the borrower was willing to perform and would suffer a forfeiture. The trial court made no finding of bad faith. Under these circumstances, the assignment to Centra CMH was not a material breach of the Commitment.

A-3296-24

Nevertheless, having concluded CCI assigned its rights to Centra CMH, CCI was divested of its rights in the Commitment and, therefore, had no standing to bring a cause of action against BAPU and Harshad. Therefore, the court correctly entered judgment in defendant's favor on CCI's claim and dismissed CCI's complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3296-24